IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**GENEVA K. KING**                                                                                       **PLAINTIFF**

**v.**                                                          **Civil Action No. 1:06CV74-EMB**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**                                             **DEFENDANT**

**MEMORANDUM OPINION**

Plaintiff Geneva K. King seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding her application for supplemental security income ("SSI") under Title XVI. The parties in this case have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The Court, having duly considered the submissions of the parties, the administrative record and the applicable law, rules as follows.

**Procedural History**

Plaintiff protectively filed an application for SSI on July 12, 2004, alleging a disability onset date of July 1, 1995. (Tr. 77- 81). The application was denied initially (Tr. 9-10, 12-16), and on reconsideration (Tr. 11, 21-24). In a hearing decision dated September 20, 2005, an administrative law judge ("ALJ") found that Plaintiff met Medical Listing 12.09B, but was not disabled as defined in the Social Security Act since drug or alcohol use was a contributing factor to the determination of disability. (Tr. 73). The ALJ's hearing decision became perfected as the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for

review on January 5, 2006. (Tr. 5-7). The ALJ's final hearing decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

## Facts

Plaintiff was born July 18, 1960 (Tr. 84) and was 45 years of age at the time of the hearing decision on September 20, 2005. (Tr. 76, 84). She completed the sixth grade. (Tr. 300). Plaintiff previously worked as waitress and telemarketer. (Tr. 105). Plaintiff alleged that she could no longer work due to mental problems, headaches, hepatitis C and arthritis. (Tr. 95, 122). However, after a review and evaluation of the medical evidence of record and the subjective testimony at the hearing (Tr. 282-307), the ALJ found Plaintiff not entitled to SSI (Tr. 69-76).

## Law

The function of this Court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Spellman*, 1 F.3d at 360. This Court may not reweigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. *Id.*; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). Despite this Court's limited function, it

must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Villa*, 895 F.2d at 1022; *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled, Plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 (1995).

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## Analysis

In her Brief, Plaintiff generally argues that the Commissioner's decision denying benefits is not supported by substantial evidence and that the Commissioner essentially ignored evidence of hepatitis C and arthritis and of her "psychological" impairments. The Court has thoroughly reviewed the administrative record and finds the Commissioner's decision is more than adequately supported by the evidence.

3

As an initial matter, Plaintiff's contention that her arthritis and hepatitis C were not adequately considered by the ALJ is without merit. (Pl.'s B. 6). The medical evidence shows Plaintiff had been diagnosed with hepatitis C. (Tr. 147). However, there is very little mention of any treatment she received for this condition in the medical records. (Tr. 222). And, there were no limitations placed on Plaintiff's activities due to this condition. As such, the Court agrees with Defendant that Plaintiff's hepatitis C is not a severe impairment under *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). Nor is Plaintiff's arthritis a severe impairment. The medical evidence shows no problems with her extremities. (Tr. 156, 162, 226). Moreover, an examination conducted in February 2002 indicated Plaintiff had normal muscle strength and sensation. (Tr. 256).

As regards Plaintiff's "psychological" problems, the ALJ found that Plaintiff did not have any severe impairments, other than poly-substance abuse and dependency. (Tr. 76). He further found that Plaintiff's extensive and ongoing abuse of and dependence on multiple drugs and alcohol constituted a factor material to the determination of disability. (Tr. 74, 76, Finding No. 4). He noted that nearly the whole medical record was based upon treatment for admission for drug abuse treatment. (Tr. 74). He then noted it could reasonably be inferred that essentially the entirety of the findings and conclusions regarding Plaintiff's emotional limitations were derived from her substance abuse and withdrawal from such substances. (Tr. 74).

A brief summary of the medical evidence is all that is required to see this. The medical evidence shows that Plaintiff sought treatment for drug addiction on numerous occasions. On September 24, 2001, Plaintiff was admitted to North Mississippi Medical Center in Tupelo, Mississippi. (Tr. 147-49). It was noted that this was the second "Behavioral Health Center" admission and "at least the fourth alcohol and drug treatment attempt" for Plaintiff. (Tr. 147).

4

At that time, Plaintiff reported taking up to 20 Dilaudid (prescription pain relief medication) tablets each day. (Tr. 147). She also reported that she injected heroin at least four times each day, as well as taking Xanax she scored on the streets. (Tr. 147). Physical examination was generally unremarkable except for signs of recent injection behavior in the neck area. (Tr. 148). Drug screening showed evidence of opiates and benzodiazepines. (Tr. 148). Plaintiff was assessed with opioid dependency, alcohol dependency, benzodiazepine abuse and poly-substance abuse and dependency. (Tr. 148). Plaintiff was placed on standard detoxification protocols. (Tr. 149). Her hospital course was described as unremarkable and she was discharged after seven days with recommendations to seek drug abuse treatment and counseling. (Tr. 149). Plaintiff denied any previous treatment for mental illness or depression. (Tr. 152).

Following this, Plaintiff returned to the North Mississippi Medical Center in Tupelo at least three additional times for detoxification, once in November 2001 (Tr. 158-63), again in January 2003 (Tr. 179-82) and again in September 2003 (Tr. 189). With regard to her September 2003 admission, Plaintiff was diagnosed with bipolar disorder (mixed episode), poly-substance abuse history and opioid withdrawal. (Tr.189). Plaintiff was given a trial of various medications and a combination of anti-depressants and mood stabilizers, which seemed to help her condition. (Tr. 190).

On October 27, 2003, Plaintiff was admitted at the North Mississippi State Hospital until November 17, 2003. (Tr. 208-12). At discharge, she was diagnosed with bipolar disorder, mixed type with psychotic features, and opioid dependence. (Tr. 208). She was also diagnosed with a personality disorder. (Tr. 208). During Plaintiff's stay, she continued to display significant drug-seeking behaviors that were disruptive to the hospital's environment. (Tr. 211). After Plaintiff's manic symptoms were stabilized, she was granted a "therapeutic discharge"

from the hospital because she did not appear to be motivated to follow through with treatment or to abstain from illicit drug use. (Tr. 211).

On February 16, 2004, Plaintiff returned to North Mississippi Medical Center in Tupelo and remained there until February 21, 2004. (Tr. 222-27). Upon admission, her diagnoses were poly-substance abuse, history of bipolar disorder and hypotension and dizzy spells. (Tr. 223).

On August 28, 2004, Plaintiff was consultatively examined by Allen R. Cooley, Ph.D., who diagnosed her with bipolar disorder (mixed type, with psychotic features), opioid dependence (currently in remission) and a personality disorder (not otherwise specified). (Tr. 237-41). He noted that overall Plaintiff would have difficulties in her ability to interact with others. (Tr. 241)

Under Pub. L. No. 104-121, an individual is not disabled if drug abuse or alcoholism is a material factor contributing to her disability. *See* Contract with America Advancement Act, Pub. L. No. 104-121, 105; Technical Amendments, Pub. L. No. 105-33, ' 5525(a); 20 C.F.R. § 416.935. This law dictates that where there is evidence of drug or alcohol abuse, the ALJ must first decide whether the individual would be disabled considering the effect of drug abuse and alcoholism. Where a person is found disabled considering these effects, the ALJ must then determine whether the individual would remain disabled if she stopped using drugs or alcohol. If not, then drug abuse and alcoholism is a material factor in the disability and the individual is not entitled to disability benefits. *See* 20 C.F.R. § 416.935. The claimant has the burden of proving that the substance abuse was not material; however, if the record shows that the ALJ did not give the claimant an opportunity to meet this burden, the court should remand for further proceedings. *See Brown v. Apfel*, 192 F.3d 492, 497-99 (5th Cir. 1999).

In this case, substantial evidence supports the ALJ's conclusion that Plaintiff's drug and

alcohol abuse and dependence were factors that were material to the determination of disability. And, Plaintiff, who was represented by counsel at the administrative level, simply failed to carry her burden of proving that her emotional and behavioral impairments were disabling independent of her drug abuse and dependence. Accordingly, the decision of the Commissioner should be affirmed. A final judgment consistent with this opinion will be issued separately.

**THIS,** the 24th day of September, 2007.

 **/s/ Eugene M. Bogen**
**U. S. MAGISTRATE JUDGE**
